**In re B.Z. CORPORATION t/a Crooked Billet, Debtor.**

**F.B. DAVIS SONS, INC., Plaintiff,**

**v.**

**Phillip E. FRANCO and Bee Zee Corporation t/a The Crooked Billet and Barry Sandrow, Defendants.**

**Bankruptcy No. 81–04125G.
Adv. No. 82–1648G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 19, 1984.

Miles Jellinek, Philadelphia, Pa., for plaintiff, R.B. Davis Sons, Inc.

George J. Wallace, Philadelphia, Pa., for debtor/defendant, Phillip E. Franco and Bee Zee Corp. t/a The Crooked Billet.

A. Charles Peruto, Philadelphia, Pa., for defendant, Barry Sandrow, individually.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether the plaintiff corporation, a builder, may recover in a suit against the debtor's landlord either on the theory of an express contract or a qua-

si-contract. For the reasons stated herein, we hold that, under the facts of this case, it may not.

The facts of this case are as follows:[1] B.Z. Corporation ("the debtor") leased a certain business property from Barry Sandrow ("Sandrow") for the purpose of operating a restaurant. The building was damaged by fire on February 3, 1979, and either Phillip Franco ("Franco") or Marc Cohn ("Cohn"),[2] who are principals of the debtor corporation, hired the firm of B.F. Davis, Inc. ("Davis") on behalf of the debtor to undertake the necessary repairs. After the completion of the work the debtor's insurer drafted a check payable to "B.Z. Corporation, T/A the Crooked Billet, Benjamin . Franklin Savings & Loan Association [the mortgage holder], Loss Payee Barry Sandrow and F.B. Davis, Contractor." The check was endorsed by the named payees and given to Davis. Franco and Cohn, stating that the proceeds of the check were then needed to cover the costs of recommencing the operation of the restaurant, requested Davis to return the check. Davis complied in exchange for $5,000.00 in cash or check and a promise of future repayment of the balance. The balance has yet to be paid. To seek redress, Davis commenced this action in the state court, although it has since been removed to this court.

■ Under the first of its theories, Davis asserts that a contract, implied-in-fact, runs between it and Sandrow. Virtually the only evidence in support of such a contract is a statement by Sandrow to Davis that he was concerned that the wishes of Franco and Cohn be fulfilled. We find this insufficient to establish the existence of a contract.

■ Alternatively, Davis requests relief under the theory of quasi-contract. To recover under this theory, the plaintiff "must show that [the defendant] wrongful-

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

**2.** Cohn was not named as a defendant in this action apparently because he sold his interest in the debtor in September of 1979. Franco did not appear in this case and a default judgment was entered against him.

ly secured or passively received a benefit that it would be unconscionable for [the defendant] to retain." _Birchwood Lakes Community Association v. Comis,_ 296 Pa. Super. 77, 87, 442 A.2d 304, 309 (1982). Davis seeks recovery under this theory notwithstanding the fact that it executed an express contract with the debtor and its principals. On facts very similar to those of the case at bench the Pennsylvania Superior Court held that no action for quasi-contract could be maintained. _Roman Masaic & Tile Co., Inc. v. Vollrath,_ 226 Pa.Super. 215, 313 A.2d 305 (1973). In that case Roman Mosaic & Tile Co., Inc. ("Roman"), installed a terrazzo tile floor in the Glenside Laundromat pursuant to a written contract signed by Paul Vollrath who, along with his wife, operated the laundry under the name of Vollrath Investments. Roman commenced an action against Vollrath Investments, as well as Vollrath and his wife.[3] The court entered judgment against Vollrath Investments and Vollrath, but not against the wife, stating the following on Roman's quasi-contract claim against the wife:

> Nor has [Roman] substantiated its claim of unjust enrichment. The doctrine of unjust enrichment is clearly "inapplicable when the relationship between the parties is founded on a written agreement or express contract." [Roman], however, is seeking to invoke the doctrine against a person who was not a party to the contract, i.e., Mrs. Vollrath. "It is elementary law that no person can be sued for breach of contract who has not contracted either in person or by an agent; or in other words who was not a party to the contract." The doctrine of unjust enrichment cannot be used to circumvent this principle merely by substituting one promissor or debtor for another. It is not enough that Mrs. Vollrath received some benefit from the contract. To sustain the claim, [Roman] must show

that she wrongfully secured or passively received a benefit that it would be unconscionable for her to retain. Thus, although [Roman] conferred a benefit on Mrs. Vollrath, since it was done pursuant to a contract with the corporation and her husband, [Roman] cannot secure relief from her unless she did something misleading or otherwise improper in connection with the contract.

_Id.,_ 226 Pa.Super. at 217–18, 313 A.2d at 307 (cites omitted). In the case at bench, since a contract on the repairs was executed among Davis, the debtor and its principals to which Sandrow was not a party, Davis cannot now seek relief against Sandrow on a theory of quasi-contract.[4]

---

3. Although the wife was not initially a defendant in the suit, she was subsequently added.

4. We have considered _Colish v. Goldstein,_ 196 Pa.Super. 188, 173 A.2d 749 (1961), and find that Davis's reliance on it is misplaced. In _Colish_ the court granted relief on the theory of

quasi-contract largely upon misstatements made the defendant upon which the plaintiff justifiably relied. _Colish_ thus falls within the exception announced in the final sentence of the above quotation from Roman.