657 A.2d 12

**Barbara G. LITTLE, Appellant,**

v.

**Scott Q. LITTLE, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 6, 1994.

Filed April 10, 1995.

Daniel R. Lovette, Johnstown, for appellant.

I. Samuel Kaminsky, Johnstown, for appellee.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

CAVANAUGH, Judge:

This matter is presently before the court on the appeal of wife/appellant Barbara Little ("Wife") from the order of February 9, 1994 of the Court of Common Pleas of Cambria County. The February 9, 1994 order dismissed Wife's exceptions and sustained the exception of Scott Little ("Husband") to the Court's order of November 18, 1993. The November 18, 1993 order resolved the issues of child support and alimony between the parties.

For the reasons which follow, we affirm the decision which granted Husband's petition to terminate alimony but vacate and remand to the trial court its denial of Wife's request for child support.

Barbara and Scott Little were married on August 3, 1985 and divorced on January 14, 1991. On January 4, 1991 the parties entered into a "Marriage Settlement Agreement" aimed at resolving certain issues relating to their anticipated divorce. Article 3 of the agreement, which concerned alimony to Wife, stated that Wife would receive $1600 per month alimony from January 1, 1991 through December, 1994 so long as Wife did not, at any time, "fail or cease to be enrolled in a college or university as a full-time student." Husband also agreed to pay child support of $1500 per month for the benefit of their two minor children who resided with Wife. A final decree in divorce was entered on January 14, 1991.

In March 1991 Wife voluntarily entered a twenty-eight day in-patient alcohol rehabilitation program in Pittsburgh. Prior to entering the program Wife asked Husband to care for their children while she was away and Husband agreed. Prior to

Wife's entry into the program Husband had filed a petition to terminate alimony, after her entry into the program Husband filed additional petitions to terminate child support and to change custody of the children. After Wife's release from the program a court conference (but no formal hearing) was held after which, on May 22, 1991, the court entered orders vacating the child support order, increasing Wife's alimony to $2000 per month, and permitting Wife certain visitation with the children.

On March 19, 1992 the May 22, 1991 order was modified, with consent of the parties, slightly altering the custody and visitation arrangements. Even though Husband was considered the primary custodial parent, and the children resided with him, on July 6, 1992 Wife requested that the court award her child support. Husband responded with a petition to terminate alimony, alleging a violation of Article 3 of the Marriage Settlement Agreement in that Wife was not enrolled in college on a full-time basis. Wife responded with a request to increase alimony.

On November 18, 1993 the court below denied Wife's petition to increase alimony and Husband's petition to terminate alimony. It also denied Wife's petition for child support. Exceptions were filed by both parties. The court then denied Wife's exceptions but granted Husband's exception which terminated his responsibility to pay alimony. Wife then appealed to this court.

On appeal, Ms. Little raises the following two issues:

I.      Under the terms and conditions of a Marital Settlement Agreement, providing for alimony for the Wife, should a condition precedent be enforced when an intervening illness renders performance by her impossible?

II.     Should a father, who is the primary custodial parent be required to pay child support in a "Melzer" formula case, where the mother and father spend almost an equal amount of time with the minor children?

We first address Wife's claim that the trial court erred in terminating alimony pursuant to the provisions of the marriage settlement agreement. Wife claims that the condition precedent of Article 3.02 of the agreement (that she attend school full time) does not apply because of her medical condition and also that the parties, by their actions, have treated the agreement as modifiable.

We begin our discussion with a review of the relevant provisions of the marital settlement agreement.

### 3.02 Alimony

(A) Husband agrees to pay alimony to Wife in the sum of $1,600 per month. The alimony payments shall commence January 1, 1991 and continue on a monthly basis to and including December of 1994, at which time the alimony payments will cease. However, should, at any time, Wife fail or cease to be enrolled in a college or university as a full-time student or should she choose to voluntarily withdraw from school or is involuntarily required to cease her education as a full-time student, [except Wife may be part-time student for the spring term starting January 3, 1991], the obligation for alimony shall be immediately terminated and shall not be subject to reinstatement. However, in the event that Wife completes her schooling by receiving a four-year degree before December, 1994, then the funds provided to be paid as alimony hereunder shall continue to be paid through the month of December, 1994 as rehabilitative alimony for the purposes of enabling Wife to have adequate time to obtain a job and settling herself after her schooling is completed.

(B) The alimony obligation set forth hereunder in 3.02(A) as conditioned, is non-modifiable as to amount or duration (and the parties hereto specifically waive any right to modify the same except as set forth under Paragraph 3.02(C) hereunder except said alimony shall cease with the occurrence of any one of the following events:

(i) Death of Wife;

(ii) Death of Husband;

(iii) Remarriage of Wife;

(iv) Wife's cohabitation with an unrelated adult male person.

(v) Husband's disability or unemployment.

(C) In the event Husband is terminated from his employment position with Allegheny Orthodontic Associates, Ltd., for cause prior to the payment of the final payment of Alimony as provided hereunder, Husband shall immediately be permitted to Petition for Modification and/or Suspension through the Court of Common Pleas of Cambria County–Domestic Relations Division, and the Court shall make a determination as to the continuation, modification or suspension of said obligation, if any.

The trial court terminated Husband's alimony obligation as of July 8, 1992 finding that the parties' property settlement agreement provided clear and unambiguous language that Husband's responsibility to pay alimony would terminate should Wife not be enrolled as a full-time college student. Since Wife was not a full-time student the court decided it could not, and should not, modify the agreement without the consent of the parties. Accordingly, the court, reluctantly, terminated Husband's alimony obligation.

We first note that since the instant alimony obligation arose out of a settlement agreement, rather than a court order, it is governed by contract law. *Bullock v. Bullock*, 432 Pa.Super. 643, 639 A.2d 826 (1994). "[A] settlement agreement between a husband and wife is governed by the law of contracts unless the agreement itself provides otherwise." *Brower v. Brower*, 413 Pa.Super. 48, 604 A.2d 726, 730 (1992). (Citation omitted). A basic tenet of contract law is that when the language of a contract is clear and unambiguous its meaning must be determined by an examination of the content of the contract itself. *Halpin v. LaSalle University*, 432 Pa.Super. 476, 639 A.2d 37 (1994). "The Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360, 1364 (1992).

■■■ We have reviewed the marital settlement agreement entered into by the parties and can find no ambiguity in its terms regarding alimony. Husband agreed to pay Wife alimony only for so long as she remained a full-time student. Husband moved for termination when Wife was not in compliance with this requirement. The court below was correct in terminating the alimony payments since the circumstances that the parties agreed would trigger a termination of alimony had occurred. The appellant's argument that her alcohol treatment was a change in circumstances not anticipated by the parties will not afford her the relief she requests as the clear and unambiguous language of the contract into which she entered provided for no such occurrence. Unfortunately for appellant, in this jurisdiction this contract may not be modified by a court absent an ambiguity or fraud. *Woodings v. Woodings*, 411 Pa.Super 406, 601 A.2d 854, 858 (1992). Accordingly, appellant cannot prevail on this claim.

Wife next claims that that the parties' prior consent to court-ordered modification of their agreement should permit subsequent court-ordered modification. In support she cites the case of *Ashbaugh v. Ashbaugh*, 426 Pa.Super. 589, 627 A.2d 1210 (1993).

In *Ashbaugh* the parties entered into a settlement agreement which was incorporated, but not merged, with their divorce decree. The husband on appeal argued that the court should look at the parties' conduct subsequent to the execution of the agreement to determine their intent to treat their agreement as a court order subject to modification. A panel of this court, while first observing that husband's unique argument was not supported by any relevant authority, found that the parties conduct and the trial court's prior rulings (which all resulted in the enforcement of the written agreement) "evidenced no intent to treat the agreement as a modifiable court order." *Id.* at 599, 627 A.2d at 1216.

■■■ We reach the same conclusion today. We find that the parties' consent to the court order which increased Husband's alimony payment to Wife from $1600 to $2000 per month did

not evidence their future consent to any court-ordered modification of their agreement which agreement specifically stated that its terms regarding alimony were non-modifiable. Accordingly, appellant is no longer entitled to alimony payments from appellee.

Appellant's last claim is that the trial court erred in refusing her request for child support.

■ The trial judge denied appellant's petition for child support because it was "clear . . . that [appellant] as a non-custodial parent, even though she may spend considerable time with the children, is not entitled to receive support from [appellee], the custodial parent." Trial court opinion, pp. 2–3. The court below based its decision on the fact that Wife is not named as the primary custodial parent of her two minor children.

Before this court Wife argues that Husband, with net monthly income in excess of $20,000, should be ordered to pay child support, even though the children's primary residence may be with Husband, in that the parties share physical custody of the children for nearly an equal amount of time over each month. Husband responds that Wife is entitled to receive no child support.

Pursuant to orders of May 22, 1991 and March 19, 1992, Husband is named as the "primary custodial parent" of the minor children. Wife has "partial custody and/or visitation" on Tuesday, Wednesday, Thursday, and Friday from 6:45 a.m. through 5:00 p.m. from June through August and from 7:45 a.m. through 6:00 p.m. from September through May. Wife is responsible for all transportation of the children to and from this "visitation." Wife also has "visitation" every other weekend from Friday at 7:45 a.m. through Sunday at 5:00 p.m. and "visitation" every Wednesday from 7:45 a.m. through 6:00 p.m. Thursday.

A review of this schedule reveals a pattern of such significant custody/visitation that it is more properly labeled "shared" custody. The parties, de facto, share both the legal and physical custody of their children. Accordingly, Wife who

claims the attendant expenses of child custody, requests that a child support calculation be ordered and support awarded.

We agree that a child support calculation should be made by the court below and that after such a review child support may be ordered to Wife. Given the testimony of the extensive amount of time the children are in the custody of Wife, and of wife's limited income versus Husband's $20,000 per month income, such an award may be appropriate. "Parents are liable for the support of their children who are unemancipated and eighteen (18) years of age or younger." 23 Pa.C.S.A. § 4321(2), *Luzerne County Children and Youth Services v. Cottam*, 412 Pa.Super. 268, 603 A.2d 212, 214 (1992), *alloc. denied* 530 Pa. 666, 610 A.2d 45 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992). "Child support is a shared responsibility; both parents must contribute to the support of their child in accordance with their relative income and ability to pay." *Depp v. Holland*, 431 Pa.Super. 209, 636 A.2d 204, 206 (1994).

*Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984) [1] stated that a hearing court should calculate child support awards by: calculating the reasonable expenses of raising the children involved; determining the respective abilities of the parents to support their children; calculating each parent's total support obligation; and, finally, determining what portion of the obligation is offset by support provided directly to the children and what portion must be satisfied by support payments to the other parent. We believe, given the facts before us today, that the court below should make this analysis to determine if child support to Wife is appropriate.

Accordingly, we hold that where parents of minor children share custody to the extent that the non-custodial parent has the children for nearly fifty (50%) percent of the hours of each month and has, in addition, the entire responsibility for trans-

---

1. *Melzer* was decided prior to the adoption of the present support guidelines contained in Pa.R.C.P. 1910.16. However, Rule 1910.16–5(a) (support guidelines operation) provides that *Melzer* continues to apply in those cases, like the instant action, where the parties income exceeds the amount which can be calculated by the formula.

porting the children to and from her home, their father's home, their schools and other activities; and where the "primary" custodial parent's earnings or earning potential varies significantly from the other parent, child support may be ordered to be paid to the "non-custodial" parent. We would anticipate that such shared child support would be limited to cases such as this where the "visitation" amounts to de facto shared custody and where the non-primary custodial parent is able to demonstrate regular, necessary and reasonable expenses incurred attendant to the visitation/custody.

Accordingly, that portion of the court's order of February 9, 1994 which denied appellant's request for child support is vacated and this matter is remanded to the trial court for proceedings consistent with this opinion.

That portion of the February 9, 1994 court order which terminated appellee's obligation to pay alimony is affirmed.

Jurisdiction is relinquished.